### DOBLE v. PELTON WATER WHEEL CO.

(Circuit Court, N. D. California. December 30, 1910.)

#### No. 14,722.

1. **PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—HYDRAULIC NOZZLE.**
   The Doble patent, reissued letters, No. 12,460, for a needle regulating deflecting hydraulic nozzle for the propulsion of tangential water wheels, was not anticipated, covers a true combination, and discloses patentable invention; also *held* infringed.

2. **PATENTS (§ 52*)—ANTICIPATION—ACCIDENTAL USE OF DEVICE.**
   The mere accidental employment of a feature or element of a device, where its real value, for a purpose for which it is afterward put in use by another, is not recognized at the time of such accidental use, cannot be invoked to anticipate a patent for the later device.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 70; Dec. Dig. § 52.*]

3. **PATENTS (§ 18*)—INVENTION—SIMPLICITY OF DEVICE.**
   Simplicity of a device is no evidence of want of invention nor of obviousness, but in such cases the question of patentability may, and in many cases must, be determined largely from the results attained.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 18; Dec. Dig. § 18.*]

In Equity. Suit by May E. Doble against the Pelton Water Wheel Company for infringement of letters patent, reissued No. 12,460, for a hydraulic nozzle, granted to William A. Doble June 22, 1909.

Miller & White, for complainant.
Booth & Acker, for defendant.

VAN FLEET, District Judge (orally). In this case I have requested the attendance of counsel this morning that I may announce the conclusions I have reached. The suit is one for the infringement of a patent. It has proven a very interesting case to me, not only by reason of its importance to the parties, but by reason of the intrinsic character of the questions involved, which have induced very careful consideration at my hands. Ordinarily, perhaps, I might content myself with a brief statement of my conclusions, but in view of the very able and elaborate manner in which the case has been presented upon both sides, and the apparent earnestness with which questions have been urged, I feel that something more is due to counsel than a mere statement of bald conclusions without suggestion of the considerations which have moved me thereto.

The patent in suit covers an improvement in hydraulic nozzles, that specific character of nozzle which is designated in the art as a "needle regulating deflecting hydraulic nozzle" for the propulsion of tangential or impact water wheels, to be used in power plants for the generation of electricity, and, as well, for the propulsion of machinery in flour mills, sawmills, and other like purposes. No question is made in the case as to the value in practice of the device covered by this patent. That is demonstrated by the fact that since it was put upon the market it has gone into very general use, and has in fact been largely introduced and adopted by the defendant. And there is no question, therefore, but that, if the patent covers a valid device, it is being infringed by the defendant.

[1] An examination of the elements covered by the patent discloses that the needle regulating deflecting nozzle is not a new thing in the art. A deflecting nozzle, in fact, has been known for a considerable period, the necessities of the practice requiring, for the successful operation of a plant propelled by a tangential water wheel, that there be means for readily deflecting the nozzle off the wheel in order that its speed may be thereby controlled, and the element of a needle regulating device for such a nozzle is also old in the art, and one that was in use at the time that the patent in suit was granted.

The particular element of novelty which tends to distinguish the device of the patent from the existing art is in the manner in which the nozzle is coupled to the pipeline. In order to have a deflecting nozzle, there is the necessity of connecting the nozzle with the supply pipe or pipe line by some character of rotatable joint which will permit movement and deflection by some appropriate means, and the deflecting means that has been generally adopted in connection with such rotatable joint is the usual and ordinary mechanical governor of standard form, which is not involved here and therefore is unnecessary to describe. The value of the needle regulating device has grown out of the fact that the mere deflection of the nozzle was found not to be sufficient for purposes of perfect regulation. It would deflect the stream off the wheel, but it could not entirely regulate its speed with relation to the load upon it, it being found that in practical operation, and especially as illustrated in its use in the propulsion of wheels for the generating of electricity, the load on the wheel varies greatly and not regularly, and thereby it becomes essential for the purposes of having efficient service by the wheel that its speed be regulated by means of some method which will enable its varying load to be taken care of by the regulating means. This has been accomplished through the use of a deflecting nozzle regulated by a needle; the latter device being a form of valve which is introduced into the nozzle, and so adjusted that it can be readily moved in such a way as to either partially or entirely close the mouth of the nozzle in case of necessity; thus reducing or enlarging the jet as required.

The particular form of nozzle covered by this patent is a curved form of nozzle which enables this valve or needle regulating device to be introduced at a point forward of the rotatable or pivotal joint, and so as to pass through the casing or wall of the nozzle and bring the

regulating mechanism outside the nozzle and forward of the joint so as not to interfere with the passage of the stream through that portion of the nozzle; that being the essential purpose that is subserved by the curvature of the nozzle. But the curvature of the nozzle being at a point forward of its joint connection with the supply pipe, and its needle regulating device being introduced forward of that connection, the wall or casing of the nozzle serves not only the purpose I have indicated, but also as a support for the stem of the needle, and thus maintaining the point of the needle valve in equilibrium with reference to the point of the nozzle. So far as the features that I have indicated are concerned, the elements covered by the patent were old in the art, and were known to the inventor of the device covered by the patent at the time he took out the patent. But, prior to the issuance of the patent in suit, the deflecting needle regulated nozzle as used in practice had been pivoted in such manner to the pipe line that the pivotal points were at right angles with the plane of its curvature or the plane of its sinuosity, as it is indifferently termed in the evidence, and it was found that the force exerted by the high pressure of the stream in passing through the curved nozzle induced a constant effort to in common parlance straighten out the nozzle—that is, straighten out the pipe— and that this effort of the stream resulted in what are termed reactory strains which would induce the nozzle, by reason of the manner in which it was pivoted, to move or rotate upon its pivots and interfere very seriously, and to an extent which it was found to be necessary to overcome, with the action of the governor, which required very delicate adjustment. It appears that this difficulty was one which gave rise to long and very serious consideration by those versed in the art and repeated efforts to overcome these reactory strains in order that the governor might be free to perform its function of deflection without having to combat and take up and be affected by these reactory strains. This difficulty as disclosed by the record gave rise, as I say, to a great deal of study by expert engineers to overcome it; but down to a time shortly prior to the application by the assignor of the complainant in this case for the patent in suit that problem had not been successfully solved. That it was solved by the device involved is very clearly disclosed by the record.

The patent in suit covers a device whereby the nozzle is pivoted to its supply pipe with the plane of the axis of its pivotal points in the same plane with its curvature or sinuosity, and that results in the pivots taking up these reactory strains, and thus relieving the strain upon the governor. The pivots being in the same plane as the curvature of the nozzle and at right angles to the direction of flow, the reactory strains are thereby thrown upon these pivotal points and thus there is no tendency of the nozzle to rotate upon these pivots, and, the nozzle being relieved of the weight of these reactory strains, the governor is left free to deflect it on or off the wheel, with nothing to take care of but the weight of the nozzle itself and the water passing therethrough. This relieves the device of the necessity of employing what had theretofore been employed in nozzles of that character, pivoted at right angles to the plane of sinuosity, of having a counterweight at-

tachment, the purpose of which was to take up as far as possible and relieve the governor of these reactory strains. The use of counterweights for that purpose had been found to be wholly inadequate and insufficient because of the variation of the load upon the wheel. Of course, the counterweight had to be of fixed capacity or weight, and consequently it could not change or adjust itself to the varying load upon the wheel, and therefore it could not efficiently counteract the effect of these reactory strains and thus relieve the governor mechanism.

Now, as I have before suggested, there is no question, and can be none under the evidence in the case, as to the value in the art of the device covered by the patent in suit. The defenses are not that it is wanting in value, but that it is without novelty as being wholly anticipated by the existing or prior art; that in the first place the changes here made as exhibited in the device in suit from the art as it previously existed is a purely mechanical one, resulting as said in defendant's brief from a mere quarter turn given to the nozzle in the method of pivoting it to the supply pipe—a thing which it is said was obvious to the most ordinary mechanic skilled in that class of mechanism. And it is likewise urged that, assuming that this was not a mere mechanical change, nevertheless the precise method of pivoting a nozzle to a pipe line existed in the prior art, and that that feature of the device was thereby fully anticipated. It is further claimed that, if the several elements as described in the claims of the patent are to be regarded as necessary elements therein, the device shows, not a combination, but a mere aggregation of those various elements; in other words, such an aggregation as results from the mere coupling together of separate elements, each one working according to the law of its own being, and in no wise modified or controlled by the others with which it is united.

As to this last claim, I do not think it necessary for me to go into much detail as to the considerations which have moved me to that conclusion, but I have become satisfied, and especially as a result of the re-examination of the case that I have made since the physical inspection of the practical working of the device in suit, made by me in company of counsel since my first reading of the briefs, that this device can in no just sense be successfully characterized as a mere aggregation. I have no doubt that the various elements involved do so coact, the one with the other, that while, not changing the essential action of each or any of them, they do nevertheless so modify each other that they bring about a new and valuable unitary action as a whole and produce a result which brings the device fully and clearly within a proper designation of a patentable combination. The removal of the reactory strains from the governor by throwing them upon the pivots as indicated, not only leaves the governor free to more readily and efficiently perform its function of deflecting the nozzle off the wheel, but it eliminates from the device as heretofore practiced the element of counterweights for taking up those strains, thereby simplifying it; while the effect of these changes is to enable the action of the needle valve to more readily and efficiently co-ordinate with the governor mechanism in deflecting the jet back upon the wheel, thereby accomplishing a readier and more perfect regulation of the wheel than had ever before been possible.

186 F.—34

I am also of opinion that the various anticipating devices pleaded and put in evidence, with the single exception that I shall hereafter mention, may be largely discarded from consideration in determining the question of anticipation. I do not think that as illustrated by the evidence any of these devices is such as can be said to exhibit the equivalent of this device or anything essentially tending to evidence anticipation; and this includes, as well Defendant's Exhibit 2, which is I believe designated as "Bulletin No. 9 of the State Mining Bureau," involving a cut or publication of a device which does show a method of needle regulation as therein disclosed but which even to my unskilled eye, and, as demonstrated by the fact that it has never been sought to be put into use, discloses, as contended by complainant, a device that would not be practicable in the art. Its necessary mechanical construction, as illustrated by the evidence, is such as to violate what seems to me from my examination of the case one of the primary necessities of that sort of a device, and that is that the interior of the nozzle be kept as absolutely free as possible from obstruction or any means by which the water may be arrested or interfered with in its passage. This publication exhibits a device of such patently impracticable character by reason of the introduction of the regulating device of the needle into the interior of the nozzle bore, and thereby requiring the existence of a large open chamber at the side of the nozzle, that it presents to my mind evidence very satisfactory why it has never been sought to be put into actual use; and, of course, a practical and successfully operating device cannot be anticipated by one wholly impracticable.

There is one exception, as I have indicated, to this somewhat general and sweeping discard of these alleged anticipating devices that demands more definite reference, and that is Defendant's Exhibit No. 11, embodying what is known as the "Hagmaier installation" at Mill Creek plant No. 1, which was one of the installations that was examined by myself in company with counsel on the occasion adverted to above. It is very strenuously urged, and the weight of the contention of defendant is put upon this feature of the evidence, that this installation at Mill Creek plant No. 1, known as the "Hagmaier device," discloses a full anticipation of the device in suit or its equivalents; that is, it discloses a curved nozzle with a rotatable joint pivoted in the same plane as the nozzle's sinuosity, that it discloses equivalent regulating means, not only at the point of discharge of the nozzle, but as well through the medium of the cut-off gate in the rear of the joint, and that, in other words, it fully anticipates the device in suit, and I am free to state frankly at this time, in view of the fact that counsel may not have been aware of the particular object which existed in my mind at the time that I requested a physical inspection, that that was the moving consideration which induced a desire on my part to visit these plants and see the devices in practical operation. I must confess that the argument in the brief of counsel for the defendant, which was exceedingly plausible and forcible, had affected my mind to a very considerable degree as to the value of this device as an anticipation of the one in suit. But, as the result of a re-examination of the case in the light of that inspection, I have

become thoroughly convinced that the contention that this Hagmaier device exhibits such anticipation cannot be sustained. It is true that it is a curved nozzle but is a nozzle of peculiar construction. It is what is termed in the briefs a double or twin nozzle each branch of which is of precisely the same capacity and the two branches of which unite in the main body of the nozzle which is itself pivoted to the supply pipe. The nozzle was designed really for the purpose of projecting upon a pair of twin wheels upon the same shaft two jets of water from the same supply-pipe and it is a device which, the main trunk representing the body of the nozzle, branches out in arms of a curved form through which one stream strikes the water wheel to the right and the other one to the left and it thereby is used as a means of turning two wheels that run as I say upon the same shaft. Now it is true that that is a curved nozzle; that is, each one of these separate branches is curved in form, but they were not curved in form for any such purpose as required by the device in suit. They are unattended by any needle regulating device, and it is perfectly patent from the form of the device that the curvature of the arms is solely that the stream may strike the wheels directly rather than at an angle. It has removable tips on each branch of the nozzles and the quantity of flow may thus be changed within certain restricted limits but only by stopping the plant and unscrewing one sized tip and putting thereon one of a smaller dimension or larger dimension, as the case may be. But, of course, as is perfectly obvious to any one at all skilled in the art, this is not, as put by the witnesses, a regulating device. It is merely a replacement of one size of tips for another, and it cannot take the place nor perform the function of the needle regulating device which is found in the patent in suit. So far as the claim that the cut-off gate in the rear of the rotatable joint constitutes a means of regulating the flow, I hardly think that the defendant seriously contends for that proposition, since it is very manifest from all the evidence, or its great weight, that not only is that means never resorted to for the purpose of regulation, but that it would not be either safe or practical to attempt it. As is very clearly shown by the evidence, it is one of the results of hydraulic phenomena that, if you interfere with the flow of the stream at a point remote from the point of ejection, you will immediately depreciate and very largely destroy the efficiency of the flow, and consequently the efficiency of the jet. Moreover, it very clearly appears that to attempt that means of regulation would be attended with great danger to the permanency and safety not only of the cut-off gate, but of the pipe line. I am perfectly satisfied, therefore, that neither the removable tips nor the cut-off gate subserves the same purpose or is in any just sense the equivalent of the needle regulating device found in the patent in suit.

[2] The main contention, however, with reference to this device is that it anticipates what defendant strenuously contends is the single element of value partaking of the slightest novelty in the device of the patent in suit, and that is the fact that the Hagmaier installation is pivoted in the plane of the sinuosity of its nozzle arms; and that it is so pivoted is true. There is evidence by Mr. Hagmaier and by one or

two other witnesses indicating that at the time of the conception of that device he had in mind in part the very purpose admitted to be subserved by that feature of the device in suit—that is, the taking up of these reactory strains—but I find myself wholly unable to give sufficient credence to that feature of the evidence to enable me to find that such was the fact. It seems to me that it is opposed to and contradicted by the physical circumstances and by the history of that device and by the character of the device itself, and what it was intended to subserve. That device, as I have indicated, was designed and installed for the purpose of enabling the stream to be projected upon two wheels upon the same shaft. It necessarily had to be deflectible, and, it being a twin or double nozzle, I have no doubt that the method of pivoting that device to the pipe line was largely, if not solely, with reference to the means of vertical deflection from the wheels, since it could not very well be deflected laterally. That the idea of its pivoting being a means to take up reactory strains could have existed in the mind of the one who conceived that device is not plausible, for the very reason that, the device being in equilibrium, the force of the two arms of the nozzle being precisely on a standard of equality, as shown by the evidence, the necessary effect of one branch of the stream was to take up or counteract any reactory strains that might be induced by the other. It is claimed that it would perform the function of taking up the reactory strains in either arm in the event that the other became clogged. But I cannot for a moment believe that any such contingency was in the mind of the man who conceived that device, for it is perfectly obvious from a practical point of view that immediately upon such an event happening—it is not disclosed in the evidence that it has ever happened—the unit would undoubtedly be at once shut down for the purpose of removing such obstruction. I am satisfied, therefore, as I said a few moments ago, that that device was conceived to meet the necessities of that particular situation, and that it was pivoted in the plane of its sinuosity simply for the purpose of deflection and not for any such purpose as that feature was employed in the device in suit; and, furthermore, that its effect for the purpose here employed was not and could not have been discovered in the working of that device. That being true, it is well established that the mere accidental employment of a feature or element of a device, where its real value for a purpose for which it is afterwards put in practice by another is not recognized at the time of such accidental use, cannot be invoked to anticipate a later device. While it may be conceded, as defendant contends, that the essential point of novelty in the device in suit rests solely and alone in the particular feature of the method of pivoting it to its pipe line, I do not regard it as at all material if that be admitted, since it is well established you cannot construe a patent for a combination such as this with reference to novelty as to any distinct separate feature; for that purpose the device is to be judged as a unit, and it is to be determined from its unitary action whether it be a valuable combination or whether a mere aggregation. You cannot take it piecemeal and finding that its various elements have been anticipated in different devices of the prior art, none of which, however, cover all of the elements which are to be

found in the combination, and thereby successfully sustain a defense of anticipation. You must find all the elements of the combination or their equivalents in some particular device which is claimed to be an anticipation; and therefore it seems to me that, although it be conceded that the real change from the existing art made in the device of the patent in suit was the method of pivoting it to its pipe line so that its pivots would take up these reactory strains, such concession does not in any wise militate against its being held to involve novelty.

[3] And, lastly, as to the objection that the material change in the device of the patent from the existing art is purely a mechanical change of simple and obvious character, I am fully persuaded that this claim cannot be sustained. That it appears simple, now that it has been accomplished, may be conceded; but that it was obvious is fully negatived by the evidence as to the earnest and repeated efforts made to accomplish the result which has been attained. Simplicity is no evidence of want of invention nor of obviousness. The question of patentability in such an instance may and in many cases must be determined largely from the results attained; and those results are such in this device as to disclose novelty. I am persuaded therefore from a re-examination of the whole case that the defenses interposed cannot be sustained.

As indicated, I have not reached these conclusions without very painstaking thought and examination, but I can say unhesitatingly that after such re-examination my mind is left free from doubt, so far as my judgment dictates, as to the correctness of these conclusions. I would have preferred, had it been compatible with the other work upon my hands, to have put my views in this case in writing; but, not having that opportunity, I trust counsel can sufficiently gather from these very general and somewhat desultory suggestions the views that have actuated my judgment.

In accordance with these considerations, a decree may be entered in favor of the complainant, and provision made therein for having the question of damages referred to the master.